The next case up this morning is Nichols v. Meekamp. That's case number 4100796 for the appellant Jesse Gilsworth for the appellee Renee Ingram. Mr. Gilsworth. Thank you. Good morning, Judge Gilsworth. I also want to please the court. We are dealing with here a full warrant of seizure and probably the best way to describe why this case should not go forward is summed up in the language of Ms. Nichols. She came to court and testified that she had, quote-unquote, no acts to prompt in this case. What we have is an individual who stands for office, is elected, did so continuously for 20 years and is subsequently subject to an order of removal based on the petition of a person who has no acts to grind in the outcome. There are many, many political questions that come up and one that is most recent in mind that I think that actually really illustrates why the legislature has placed limitations on these suits. It involves President Barack Obama. Many people have stood up and said, I demand to see his birth certificate, in fact it's a constitutional requirement that he be born in the United States. If we start allowing every individual in the United States to bring a formal rental proceeding to test his standing and his capacity to hold office, the office holder will obviously never get any work done. Can you imagine? I know we're in Illinois, but can you imagine if we had any office holder who was constantly subject to these suits, how would they possibly be able to proceed and move forward in their duties in office? The legislature has provided a remedy to that, and historically the remedy has been provided to this. Historically this was something that came out originally for the first 14 years of the Quo Morento writ out of Chancery, but since 1290 Quo Morento has been statutorily codified. In Illinois, the people who are allowed to bring suit... Since 1290? 1290 is the original statute of Quo Morento. Gee, I thought we were in a state until 1818. I realize that, but that's where the original statute comes from. And it's important because when we talk about the issue of mootness, the original statute was in fact a form of criminal penalty, and it still contains criminal penalties today, which is something we will get to later on. But simply put, the legislature has set up a procedure that allows basically for rival claimants, and the case law has set up a procedure by which individuals who have a direct and Those suits have included in the past such things as individuals who will suffer and actually have to pay a higher tax because of the acts of a board that's not properly instituted or convened, or in this case with Mr. Nekam, basically it's limited to rival claimants. The statute says, in fact, that all cases of rival claimants may be properly joined and tried at the same time. Who would be a rival claimant? A rival claimant could be another, strangely enough in this instance, perhaps Ms. Nichols if she had objected in a timely manner, and if she had come to court saying, I should be in that office, but for the acts of Mr. Nekam. The person who is a rival claimant has to have a claim to the office. That is difficult, the proper person probably in this instance who may be considered a rival claimant if they had brought suit would be the person who previously held the office. Because under Illinois law, you remain in the office, the office holder remains in the office until a proper duly elected successor is appointed, or excuse me, in this case elected to hold that position. The holdover person would be the proper claimant. They have not apparently, no one has filed a claim on that basis at this juncture. Mr. Gilsdorf, as I understand it, your client stood for election again last April. He did. So, the appellee has filed a motion to dismiss this case as moot. That's correct. Do you agree that this case is moot? No, I disagree with this case. Okay, why is it not moot? It is not moot, and I apologize, but the motion for mootness was filed about a week and a half ago last week. I sent out a written objection. It's not moot because this statute is actually a criminal statute. If you read the statute, the language of the statute speaks of persons who are quote unquote a judged guilty, number one. Number two, the statute by its express language allows for fines of up to $25,000, which clearly a petty offense, business offense, is limited to $1,500. No criminal penalties were assessed against your client, though. That doesn't make it a criminal statute. It is a criminal statute nonetheless. What case says it's a criminal statute? Well, particularly with regards to that, we cite the cases in our response. I don't know if that's hit the file yet, but we cite the cases in our response, and they spell out the guesses. What relief are you asking from this court given the current situation regarding your client? What relief are we asking? Yes, sir. Well, the relief we're asking is that this matter be vacated, and that the matter basically be dismissed at this point, and not for mootness, but that the judgment of ours should be vacated and that their claims be dismissed. Well, isn't that essentially what their motion to dismiss is all about, given that he is now... If they're saying that they wish to have the judgment of Ouster vacated, then it would be the same. But they're not saying that. I don't believe in their motion. What are they saying? They're saying that they just want the appeal dismissed as being moot. That's different from saying we want to vacate the judgment of Ouster. So, we're going through this process to avoid hurt feelings? Is that... No. What else is at issue? What else is at issue? My client's been adjudged guilty, apparently, by the trial court. Now, even if no criminal penalty in terms of a fine was assessed, nonetheless, he was removed from office. What is... It is hard to imagine... Is he in office now? Is he in office now? Subsequent... Am I stuttering, counsel? Is there some problem? I ask you a question, you repeat my question. I'm trying to make sure I understand this. Okay. Number one. And number two, perhaps you may notice, sir, I have a tendency to speak a little bit quickly at times. Yes. Go ahead. And by repeating the question, it helps me to think through your question and make sure I answer it properly. Simply put, the stigma of being removed from office in and of itself is still present on my client, number one. Number two, again, the statute speaks of fines and it is a criminal penalty. If for some reason... Was he fined or charged or sent to jail or something? Well, the statute doesn't allow for someone to go to jail. But then again... Was he fined? He was not fined. But he was, nonetheless, apparently a judge guilty and ousted from office. What are you citing to that says Cuovorento is a criminal proceeding? And again... I just want a case or something, something legal that tells me Cuovorento is a criminal proceeding. Because that's your argument. Yes, it is. And we spelled out the case... What's it based on? Just tell me the case. I'm just drawing a blank in the name of the case, Your Honor. Respectfully, it is in a written motion. It comes from the Supreme Court. And basically, it deals with what the language of the statute is, number one, and what the possible penalties are. The language of the statute... Well, we have... We've drawn a distinction in this court that I think has now been proved in lots of other cases dealing with civil and criminal contempt. I'm talking about how before criminal contempt can be found or someone can be held for it, they have to have criminal due process rights. Were criminal due process rights accorded in this situation? No, they were not. Okay, and it's very strange. But it's still a criminal case? Well, sir, the language of the statute expressly states, fine up to $25,000. Now, historically and in any other case law that comes up with this issue, when we start talking of fines, those are criminal matters. The fine is not tied to any malfeasance of office. It's not tied to recouping any funds. It is a fine. The business offense of driving without insurance is only a fine only. It doesn't require jail time. But nonetheless, it's still a criminal offense. That's the express language of the statute. And again, the express language of the statute indicates an individual adjudged guilty. Those are not the language... That is not the language of a civil case. Where in the statute? I'm looking at 105-1. Is that the statute you're talking about? I believe it's under dash 18, your honor. I think it's 725-5-18-108. Yes, sir. Well, suppose the opposing counsel gets up here in a moment and says that they don't object to the judgment of Alster being vacated. Is that the end of the litigation then, as far as you're concerned? Is that the end of the litigation in following this suit? Yes. Is that the end of litigation? I can't say that in terms of... Oh, I meant this. Yes, okay. Well, you'd be... That's the relief you're... That's the relief you're taking. In opposing the motion to dismiss, that's the relief you're saying you're not getting. That's correct. Okay. I don't know. We'll find out what their position is, I guess, in a minute. Go ahead. Again, I understand the issue and the argument with regard to movements. However, even when we look at something that's in a petty nature, things of that nature, the question I think that one would have to also consider is, again, the court has already pointed out Mr. Niekamp's still in office. If for some reason he were removed from office, could the court consider his prior ouster in assessing fines in the new case? I think the answer would be most likely yes. When we start looking at individuals wrongfully withholding office, again, if it allows for fines and individuals to be fined, the courts commonly and routinely look at the prior record of individuals in determining what type of sanction, not sanction, excuse me, what kind of punishment to be imposed. And Judge Roseberry, I like Judge Roseberry, I have great respect for him, but if you walk in with seatbelt tickets in his courtroom, one he may not consider is anything against you in sentencing. But if you get three or four, he's going to consider it, even though it may appear to be one of the most, and it is defined as a petty offense, nonetheless, we hold those against people. Further, we also have the public stigma associated with this. As much as people may look at this and not consider this, we look at our former governor. I don't think I would want to be known as the one individual that's been removed from the office of governor in the state of Illinois. Frankly, I think it's something which damages his credibility, damages his public standing, and we have the same thing happening here with Mr. Niekamp. He stands as a person who has been publicly removed from office, notwithstanding the fact that he may have subsequently been re-elected, he still carries that stigma and that's something that goes forward with him, and it is something that should not be allowed to go forward. We have individuals who are coming into court and saying, we have no ax to grind, but yet he should bear the penalty and bear the punishment related to that. That does not seem to me appropriate under any circumstance. When we look at this, the first issue that the court should take up is standing. The Phelan case, as we've cited, clearly states that standing is, in fact, jurisdictional under quo lorento suits. Individuals with no ax to grind clearly have no standing. Individuals who merely wish to have a public question resolved, that does not confer upon them standing. There are many public questions I wish to have resolved, and this court here, even today when you raise the question, why isn't this moved? Well, maybe I'll just sit here and say, I just want to have the public question resolved. I don't think any of the esteemed jurists here today would say, well that's sufficient for us to not find this moved. That's not sufficient to give rise to standing. It's not sufficient for the court to proceed with regards to the quo lorento proceeding Just because somebody wants an issue resolved, if they have no stake in the outcome, that really relegates that opinion. I thought the relators were, two of them were on the board. That's correct. Well then, doesn't that put them kind of in a unique position that they want to make sure that when the board passes something, it's legitimate? Well, that's easily solved. I mean, we've cited Arnold v. Marcamo Public Library. Also, I can't pronounce it, Vaugano v. UAG NI AUX versus Department of Professional Regulation. And basically what we're looking at is the de facto officer doctrine, which is well established in Illinois. If a person is holding office under a color of title, the acts that they perform are in fact valid. When we look at this under Vaugano, it states, pursuant to the doctrine, litigants may not hold challenges to the officer's qualifications to hold office as a means of contesting the legality of the officer's acts. So, when individuals come and say, well, we're afraid bonding won't go through, these people could challenge our bonding authority because of this person's standing. No, they cannot. That's been well established. Arnold v. Marcamo Public Library basically says the same thing. It says, we further find that the de facto officer doctrine operates to prevent an invalidation of the commission's order on remand. Well, who could have standing? A rival claimant. Again, as I stated before, the holdover from the previous term, that individual would probably have standing if they had filed a challenge and sought to move forward with the matter. That's the one thing. Basically, the statute allows for it. It states, all those who have claimed to the office, come on down, we can even try them together properly. Those are the individuals who have standing. We look, and we look at things such as Bevert. Were you like somebody who ran against this person? Somebody who ran against the person and, in fact, asserted that. Again, the person who ran against this person in this case, in fact, Ms. Daniels ran against him. Well, if no one ran, no one would have standing then? Well, no, that's not correct. No, that's not correct. First of all, the Attorney General always has standing. The State's Attorney has standing. Those are the proper individuals under Bevert to file, if there's a public question, a public policy issue, those are the proper persons to bring suit. They have standing, expressly have standing. The fact that these folks in Quincy don't like the fact that the State's Attorney declined Well, what I meant, no one other than the Attorney General and or the State's Attorney would have standing. Well, again, a rival claimant to the office would have standing as well. I'm assuming there was no rival claimant. Then the prior office holdover would have standing. If someone is not properly elected to take the seat, the previous seat holder remains in that seat until such time as a proper replacement is either nominated or elected. Mr. Kilstarfer, I'm going to get back to your citation and your response. You cited 725 ILCS 5-18-108, which is a criminal citation, but that's not the correct citation for the Quo Varento statute. It's 735, which is in the Code of Civil Procedure. My apologies for the miscite. Nonetheless, the substance of the statute still states fines of up to $25,000, which is on par in this state with a Class 4 felony. Under the Code of Civil Procedure? It may be under the Code of Civil Procedure. Do you have any case that says Quo Varento is a criminal matter? Any case that has held that? Not any case that I have right now, no. However, I do have the U.S. Supreme Court, which states that we don't look at the caption of the case. We don't look to see if it says civil procedure or criminal. We look to the language of the statute itself and determine it. And we do cite that. And the language of the statute itself says fines of $25,000. The language of the statute itself says a person, a judge, guilty. Those are words and language from the criminal law. Where in the Civil Code of Procedure do we ever say that a person may have $25,000 taken out of their pocket because of the private interest of another party? Apparently in 735-18-18. That's where it states that. In terms of civil matters, we're taking money. The fines obviously are going to be kept by the government. And if an individual who truly had standing to come to court and claim the office came in and said, I'd like this individual to find $25,000, that individual doesn't get that money, number one. And number two, under our theories, our civil theories, unless it's some kind of punitive damage theory, which it doesn't state that it's a punitive damage award, it states it's a fine, that doesn't happen. If we have a car accident, we just don't give somebody another $25,000 just because we want to do that. That does not occur in the Civil Code. It is, in fact, a criminal punishment. Let's listen. Instead of entering a judgment of ouster, the court can fine the person. In any event, it's irrelevant because your client wasn't fined. Isn't that correct? Judge Lagosky did not impose any monetary penalties. It is relevant because, number one... I'm just asking you to answer that question. Were any monetary penalties imposed against your client? No. That does make it irrelevant, however. We can... Well, how is it relevant? I don't follow that. Again, it is, in fact, a criminal statute. Just because a judge declines to fine someone... You're saying it's relevant because it's kind of a stigma to be ousted? Number one, there's a stigma associated with being ousted. And number two, it is, in fact, a criminal statute. And being found guilty of any crime carries with it possible collateral consequences, including consideration in other cases and in other matters against an individual. Again, the argument that he wasn't fined... We have murderers who come through with the courts routinely who are not fined. That doesn't mean that it was not a criminal proceeding. We have individuals who get assessed only court costs. No, but there's another criminal penalty assessed in those cases. A murderer goes to prison for a mandatory minimum of 20 years, right? So the fact that he might not be fined doesn't mean a criminal penalty wasn't assessed. I agree. The fact that they're not fined doesn't mean a criminal... That's exactly the point I'm making. The fact that they're not fined does not mean a criminal penalty... And what criminal penalty was assessed against your client? The ouster from office is... You don't think an ouster is a civil proceeding under the Act, a civil relief that's granted under the ouster or the co-parental provisions of the Code of Civil Procedure? The Act speaks, again, in terms of being a judge guilty, and it does allow for individuals to be fined. The Supreme Court, and we've cited the case, says that when we start looking at acts like this, we don't look to see what the caption of the Act is. We look to see what the sum and substance of it is. And the sum and substance of it is that individuals in civil proceedings are not a judge guilty. They may be a judge liable, but they're not a judge guilty. And they're not subject to fines. That is, in fact, what the Supreme Court says we are supposed... For which the things we are supposed... Excuse me. Those are the things for which we are supposed to look when we determine whether a statute is criminal or civil. We don't look to just the name of it. If... I don't know. Perhaps if we were to put under the Code of Civil Procedure... You're on time to rebuttal, counsel. Thank you. Thank you. Please proceed. Thank you. Good morning, counsel, ladies and gentlemen of the court. May it please the court, we do not agree to vacate the trial court's order of ouster because defendant violated the law. Period. In pertinent part, the Public Officer Prohibited Activities Act reads, no member of a county board during the term of office for which he or she is elected may be appointed to, accept, or hold any office unless he or she first resigns from the office of county board member. Wait a minute. You don't agree. Why did you file the motion to dismiss him? Okay, because defendant would have us believe that his resignation from the Adams County Board in July of 2009 renders valid his April 2009 acceptance of the oath of office of school board member. True. Had he taken the oath of office for school board member subsequent to the date of his resignation from the Adams County Board, he would validly have accepted the office. However, he accepted the office prior to resigning from the board. What would you like us to do? Your Honor, I do believe this case, as it stands in the appellate court, is moot because, as you know, defendant did subsequently... What action would you like us to take? Okay. We would like to have the appeal dismissed but the trial court order upheld. So therefore, opposing counsel and his client deprived a chance to have their case heard as to the officer under your theory. Well, the thing of it is right now, it's moot because he ran for re-election again while there were still two years left on his previous term. He was elected and he accepted the office of school board member while he was not a county board member. So now he's not in violation of the law. He's not holding the two concurrent offices because of the subsequent running for election. So because of that... Evidently, you at least agree somewhat with what opposing counsel is saying is that there's some kind of stigma that attaches to having been ousted. Therefore, even though you're saying the case is moot, you're also at the same time saying they don't have a right to contest that ouster. Well, absolutely because at the time the judgment of ouster was entered the defendant was violating the law. Why do you care at this point? Well, because I believe that we should send a message to our public officials... So we're dealing with hurt feelings on this side too? Is that what this is all about? No, not hurt feelings. It's important that our public officials do not believe that statutory law in Illinois is optional. And this is the case that is going to make that clear do you think? I think it may help because the defendant was very clearly in violation of the law because he resigned from the county board subsequent to... Well, do you agree with the opposing counsel that this violation is a criminal violation? No, I do not. In fact, I have a case that states that it's civil. And what is that case? Let me do it. Thank you. Okay, this is People of the State of Illinois, XREL, City of Leland Grove versus the City of Springfield and that is 520 NE 2D 1205 That is 520 NE 2D 1205 520 NE 2D 1205 And let me read a passage at 1211 However, as Springfield points out, attorney's fees are not awardable in a civil action unless the statute creating the cause of action specifically provides that attorney's fees may be recovered by the prevailing party. And then it goes on to say the language of section 18-108 does not include any reference to awarding attorney fees in a quo voronto action. Now, to be sure, this case is addressing the award of attorney's fees in quo voronto and it is indicted that they are referring to it as a civil action but nonetheless they refer to it as a civil action and the defendant has provided absolutely no authority for his position that this is a criminal statute. Is there an exception to the mootness doctrine that would apply in this case? You've moved to dismiss as moot the appeal. They've argued there's a stigma attached to ouster. Would that consider the underlying case? Possibly. Again, Your Honor, I think the bottom line is defendant violated the law at the beginning, he was subsequently re-elected and when he accepted the second term of office he was not in violation of the law because he did not hold the concurrent positions. I want to ask you another question. Is there a reason that you waited until the week before oral arguments to file a motion to dismiss as moot when the election apparently occurred in April? I apologize. My senior counsel did file that. I believe there may have been some issue. The parties are in disparate locations and it's been very difficult to bring everybody together to review things, to get things signed. Beyond that I would have to  my senior partner. Okay. In pertinent part, the Public Officer Prohibited Activities Act reads that if a person is appointed to an office for which he or she is elected may be appointed to accept or hold any office unless he or she first resigns from the office of county board member. Any such prohibited appointment or election is void. The statute does not prohibit a county board member from running for another office. However, it does prohibit accepting and holding another office without first resigning. And this is exactly what defendant did when he accepted the school board office while maintaining the county board office. Defendant would have  that his resignation subsequent to that renders it valid which we have already discussed but it does not. He was still in violation of the county board office. The plaintiff was not in violation of the school board office. The plaintiff was in violation of the county board office. The plaintiff was not in violation of the school board office. Further, Illinois courts have addressed the issue of a sole rival claimant. Defendant has not presented any authority stating why the interest of a sole rival claimant should be different from a claimant where there are several claimants. Moreover, defendant has not  any authority or facts showing how allowing standing to several rival claimants would open the flood gates of litigation or promote harassment to public officials at the whim of private citizens. No acts to grind? Perhaps. She just wanted something that she definitely had a personal interest in that she demonstrated a personal interest in over the proper and above suspicion. Their actions and decisions on behalf of the school district were concretely and distinctly impinged by the shadow of an illegally seated board member. Even if defendant had a colorable claim to the office which precluded any challenge to his vote, his illegal status in and of itself cast an unfavorable light upon the credibility and ethics of the school board as a whole. As such, their interest is personal and is distinguishable from that of just any public official. The affirmative defense of latches is a two-pronged inquiry. First, plaintiffs must have been inexcusably delayed in seeking remedy. Second, defendant or the public must have suffered a disadvantage as a result of the delay whatsoever  part of the plaintiffs. To the contrary, he did exactly what he wanted to do. He served concurrently on two boards in violation of Illinois statutory law. In his reply to the public hearing, he said that he was not satisfied   state of Illinois. He said that he was not satisfied with the Illinois.  said that he was not  with the state of Illinois. He said that he was not satisfied with the state of he was not satisfied  the When we look at this, I would like to finish up the one point with Justice Turner very quickly. Respectfully, Justice Pope, earlier you said that this is under the Code of Civil Procedure. If the Code of Civil Procedure had an act in there that said if you go to somebody's house, enter the house, it is not under the Code of Civil Procedure. When we look at the substance of the law, it allows for fines of up to $25,000 and as such, it is criminal. I would rely on our written response that we sent in with regards to the appropriate case authority with regards to that point. Finally, I don't think a case law relating to attorney's fees shows that this is somehow criminal. Again, I was not citing that beforehand, but from what we heard, it does not appear to be a case that was deciding whether this statute was criminal or civil. OK, thank you counsel.  submitted. The court stands in recess until tomorrow morning. Thank you.